Mr. Mines, let me check and see if you wrote the briefs in this case. I did not write the briefs in this case. This is an appellate offender case, but the briefs were filed by Melissa May, as I informed a number of members of the court in a call back in April. Ms. May, if you would like to read the briefs. Ms. May has left our office to go return to private practice and also to return to school. Unfortunately, she left a couple of cases on her desk, and Lyle Utsinger is one of them. Well, as always, we're happy to see you, and I think Mr. Utsinger will benefit from your expertise. Thank you, Your Honor. Mr. Utsinger was ticketed for reckless driving, and he then was convicted of that offense following a bench trial in Knox County. He ultimately was sentenced to a term of supervision in order to pay a fine on this Class A misdemeanor. This offense, the ticket and the conviction arose out of an accident occurring in rural Knox County around dusk on March 4th of 2011. Earlier in the day, the defendant had seen an old girlfriend of his, a woman named Carla, and they had argued about the fact that the defendant had a new girlfriend. Later in the day, things were picking up for the defendant. He was riding around in his pickup truck with his new girlfriend. Things went south. The old girlfriend saw them and started following them. It got even worse. She started tailgating them. Then what happened, according to the testimony, a statement made by the defendant to an investigating officer, and as he subsequently testified at trial, he saw something in the road. He braked. The old girlfriend tried to swerve to avoid an accident, couldn't, and ran into his vehicle. Fortunately, no one was injured. There was property damage. The police were called. The old girlfriend got a ticket for, not surprisingly, following too closely. Admittedly, she was tailgating the defendant. He got a ticket for reckless driving. Ultimately, that ticket led to his conviction, and that brings us here to the appeal. Very simply, we argue that there is not sufficient evidence. There was not sufficient evidence presented at trial to support the conviction for reckless driving. The state's theory in the case, both in the trial court and now on appeal, is that the defendant deliberately braked in order to cause an accident so that the police would come and the old girlfriend would be ticketed. That's the state's theory. The theory clearly was not supported by Carla's testimony at trial. Carla simply testified, as I earlier outlined. She talked about the argument with the defendant earlier in the day. She testifies that she saw them driving around. She decided to follow them. She decided to tailgate them. She was so close that all she could focus on was his taillights. She at least was trying to avoid an accident there by keeping an eye on his taillights. She saw that he put on the brakes. She tried to swerve to avoid an accident and couldn't. What she did add was that she didn't see any obstruction in front of the defendant's pickup truck that might have caused him to brake. Well, of course, that's belaboring the obvious because she was tailgating, and the problem with tailgating is that you can't see what's in front of that vehicle in front of you, whether it be an obstruction in the road, a piece of debris in the road, an animal, or, heaven forbid, a child running out into the road. There was only one other state witness at trial. That was the deputy sheriff from Knox County who investigated the accident. He responded to the scene. He took the vehicles off to the side. He took information from the parties and did figure out that it was, as he put it, a domestic situation, which in a way it clearly was. He also assumed that the defendant was upset and that he had, as the officer put it, brought it to court. So that was the policeman's theory, that the defendant, while riding around with his new girlfriend and having the old girlfriend tailgating him, would have deliberately braked in order to cause an accident so that he and the new girlfriend could wait for the police and or an ambulance to arrive, all the while listening to the old girlfriend yelling and screaming at them. Well, you know what I call that? That's a mood killer. That's what that is. This is not a good way to spend the time with his new girlfriend, by causing this accident and waiting for the police to come. Nevertheless, that is the officer's theory. Well, what's the basis for that theory? Was it something that the defendant said? The defendant didn't snicker or laugh about the accident. He didn't say anything to the officer about that Carla had gotten exactly what she deserved, that so-and-so. He didn't say anything. What he said was that he had seen a deer in the road. What about the passenger? There was a passenger in the truck, the new girlfriend. Under the state's theory, her life was in danger, her safety was in danger, when the defendant deliberately slammed on the brakes so that the old girlfriend could run into him. What did she have to say? Did she say that the defendant had done it deliberately? No. Did she say that the defendant had said something, oh, watch this? No. What she told the officer is that there had been a deer in the road. There was something in the road. Was it something that Carla, the old girlfriend, had said? That she talked about that, had she offered her opinion that the defendant had done it on purpose? No. Did she say that he had done something like that before, in a time when they were dating? No. Did she report anything to the officer about something the defendant had said while they were waiting for the officer to arrive? No. All she said was that she was tailgating and she couldn't avoid hitting the defendant's truck. So what we have here is the officer's theory that what had happened here was that it was a domestic situation, that the defendant was mad, and that he had deliberately brake checked in order to cause an accident. This maybe was a hunch. This maybe was a feeling that the officer had. Maybe it was similar to something that he had seen in the past. Maybe he had seen a bunch of teenagers doing something like this. This does sound in a way like a teenage stunt if somebody would do this deliberately. We don't know. All we know is that the officer formulated this assumption or conclusion, and he really didn't have any facts whatsoever. He didn't witness the accident, and there was nothing told him by the defendant, the new girlfriend, or the old girlfriend, that would have supported his theory. Now the defense challenged the theory of trial, suggested to the trial judge that there was just speculation and only speculation on the part of the officer. The trial court then said that he believed that the defendant needed to testify in order to offer a reason. Well, the defendant did testify. He got on the stand and under oath testified that he had braked because he saw a deer or a coyote or something in the road, and he specifically denied deliberately slamming on the brakes in order to cause an accident. Did he say it was a deer or a coyote? He said at that point it was a deer or a coyote. What kind of guy do you think couldn't tell the difference between a deer and a coyote? Well, there was rainy weather. I think what he was driving at was there was something in the road. His first thought at the time he reported it was that it was a deer. His passenger thought that it was a deer. Upon reflection, he thought maybe it was a smaller deer, and he thought it could have been a coyote. His point was that there was an animal in the road, and I think that was the important part. Can the trial judge make inferences from what he did know or was told to the police about what was going on? He'd be in position to perhaps conclude that there was a domestic situation, and I agree that the officer could have concluded and rightfully concluded that this was a domestic situation. That's why the old girlfriend was tailgating. But I don't know that there can be anything beyond that, because there was a domestic situation that the defendant would deliberately slam on his brakes in order to cause an accident. Because again, he was endangering Carla, his old girlfriend, and her car. He was endangering himself and his pickup truck, and he was endangering the passenger in his own car, all for the sake of getting Carla a ticket? It's simply not a reasonable inference under the circumstances, Your Honor. What we believe that the trial judge should have done here is simply accepted the testimony of the defendant. It was unimpeached. It was uncontradicted by anything that Carla had said. It was not improbable, because after all, it had to do with seeing a deer at dusk in March in rural Illinois. There is nothing improbable at all about that. In addition, the defendant's testimony was corroborated by the pretrial statement of the new girlfriend, the passenger in the vehicle, when she spoke to the police. And that particular statement of hers came in as part of the state's case. So the defendant's testimony was unimpeached, uncontradicted, not improbable, and was, as a matter of fact, corroborated. And it should have been accepted by the trial judge, rather than having the trial judge predict the improbable and outrageous theory, unsupported theory of the police officer, that the defendant had deliberately slammed on his brakes in order to cause an accident. What about the girlfriend, the old girlfriend's testimony, that she didn't see anything up there? Of course she didn't see anything. That's the danger with tailgate. Isn't that a question of fact, is how much of the roadway in front of that car she could see? Except all she could say, she did say she was following very closely. So we know that her view was going to be obstructed just because of what she admitted to be the small distance between her and the defendant's pickup truck. She also specifically said that her attention was directed to his taillights. She also said that it was raining. And under all those circumstances, I suggest that there is nothing at all persuasive about the fact that she didn't see an obstruction. She didn't, and her term was obstruction, she didn't see any obstruction in the road ahead of the defendant that would have caused him to brake. I think that that's simply not enough. There is not enough there that she didn't see anything. And of course she didn't see anything. She was tailgated. She wasn't in a position to see anything. And the officer simply had an assumption, had a conclusion that is simply improbable in and of itself, and it's not supported by any other evidence in the case. For that reason, we ask that the judge's decision be reversed on appeal. We've also pointed out and we recognize the court's reluctance to overturn the fact finder's decision. We've pointed out in the second issue in the brief some of the specific problems. There were problematic aspects of the court's ruling. He was looking for the defendant to testify when he really shouldn't. He misstated some of the facts when he did make his decision in this case. He came up with a duty to brake and he overlooked the fact that she shouldn't have been tailgating. A duty not to brake. A duty not, I'm sorry, a duty not to brake under the circumstances. That seemed to be a tree as opposed to the forest here. And the forest here was that Carla was following way too closely, was tailgating, and did not have her car under control. We respectfully submit that this conviction should be reversed. Thank you. Mr. Michael. May it please the court, counsel, Laura DeMichael on behalf of the people. Mr. Michael, I see that you did write the brief. I did. What is your position now after reading the reply brief on issue number one, the court's jurisdiction? Well, the people would contend that this court lacks jurisdiction. Defendant's reply brief abridged the text of the Rule 604B in order to argue that the meaning is clear, but the abridged version changes the meaning of the rule. The full text of Rule 604B shows that the rule is separating out court supervision from situations where a sentence has been imposed. It does so by putting the phrase placed under supervision before the phrase found guilty and sentenced to probation or conditional discharge or periodic imprisonment. It puts placed under supervision before that phrase, before the found guilty phrase, even though a defendant placed under supervision has also been found guilty. And then in different clauses later in the rule, the rule provides what may be appealed in each situation, the differing situation of court supervision versus where a defendant's been sentenced. Aren't there some issues with that? If he successfully completes court supervision, then there's no conviction at all. How can he appeal that? If he successfully completes supervision, there's no conviction in his team without even an adjudication of guilt, and he couldn't appeal that under Rule 604B. If supervision were to be revoked and— I mean, but nonetheless, he would have wanted, like he did here, to get rid of the whole thing for whatever reason. And if he successfully completes court suit, he got nothing. If he successfully completes court suit, he couldn't appeal that. If he unsuccessfully. If he's unsuccessful, he couldn't appeal it, but there also wouldn't be a conviction, and he also would be deemed—it's also deemed without adjudication of guilt, so there's very little to appeal in that case. There's just 125 hours of time. So he's got no avenue, you're saying, essentially. If he really wanted— Whatever happens, he has no route to this court. If the court supervision— That's what worries me about your argument. If the court supervision were revoked and he were to be sentenced, the sentence would be a final judgment. The final judgment then would be appealable at that time. With the court supervision, there's no sentence, but the revocation of it would impose a sentence, and the sentence would be appealable at that time, as it would be a final judgment. So it just switches the point at which it's appealable. It's not appealable until there's a conviction, until there's a certainty that he's going to have— Under your explanation, he's only got one avenue of appeal. The other two do not—he can't do it at the point of conviction and sentence. He can't do it if he's successful in his court supervision. He can't do it— He can only do it if he's unsuccessful. Yes, that's what Rule 604B allows for. Rule 604B makes the decision to treat the cases with sentences and convictions different from the case of court supervision, where there might not be a sentence, because the rule separates out the place under supervision. In the second phrase of the rule, where the rule states that probation or conditional discharge could appeal both the finding of guilt and the condition of sentence, well, that phrase, the conditions of supervision, is again placed before the finding of guilt or conditions of sentence or both. Both can only refer to two things. Those two things have to be the finding of guilt or conditions of sentence where a sentence is imposed. The other phrase has been placed before it, and also the both goes in there before the court supervision language was added. So the rules decided to treat the conditions of supervision separately from the cases involving sentences. So for that reason, people believe there's no jurisdiction. Should this court find that there is jurisdiction, defendant's been proven guilty beyond a reasonable doubt. There's much more than just a traffic accident here. We know that defendant was arguing with his ex-girlfriend, Carla Dorothy, about his relationship with another woman. Defendant gets in his truck with the other woman. Dorothy's upset. She begins to follow him. We know that she's following too closely, but she does get ticketed for following too closely, but her following too closely doesn't excuse defendant's reckless driving. Defendant told the officer that he knew she was this close to him. He says he knows that she's following really, really closely, and he slams on his brakes. Dorothy says he slams on his brakes. So she swerves but collides with the truck anyway. She didn't see anything that would have caused him to slam on his brakes. So knowing that Dorothy was only a foot behind him in the highway, defendant knew an accident could occur when he slammed on his brakes. He did so anyway, and he's guilty of reckless driving. Defendant's statement about a deer need not be believed. The trial judge specifically found that defendant was not credible. Defendant was impeached and contradicted. The trial judge noted the specific contradictions. The trial judge noted defendant had significantly changed his story. The defendant told the officer, oh, she was this close behind me. She was really close to me. At trial he says he's not aware of how close Dorothy was following him. He also changes his deer story. He tells the officer it's a deer. At trial he says, oh, it was a deer, or maybe it was a coyote, maybe it was some other animal. There's a huge size difference between a coyote and a deer. Also the trial judge found that Dorothy would have seen a deer had there been one. It's true that in tailgating him directly in front of him, she couldn't see what's directly in front of the line of the car. But if it's a deer running across the road, by being so close to him, she's going to have the same similar lines of vision. Trial judge found she would have seen a deer had there been one. She didn't see a deer. So the people would ask that this court affirm being placed under the condition of supervision, which isn't a sentence. Court supervision defers the judgment until the point where it's either revoked or not. I don't understand that statement. An order of supervision is not a sentence? Well, under 730 ILCS 5-5-1-19, a sentence is the disposition imposed on a convicted defendant, and a court supervision defendant isn't convicted. They are found guilty, but under 730 ILCS 5-5-6-3.1, the court supervision statute, D through F, explains that the entry of judgment is deferred. So there is no conviction on a... So what's your position if he doesn't pay this fine? If he didn't pay the fine, then his supervision would have been revoked. So the only way you can get an appeal is to get court supervision and then fail at it? If he really wanted an appeal, he could ask for it. Or not pay a fine or whatever. Then he's able to appeal it, but then the whole purpose of court supervision is gone. He could ask for conditional discharge instead of court supervision if he really wanted to. Of course, the desirable part about court supervision is that there's no conviction. You could ask for 30 days in jail if you wanted to. He still has the benefit, if he successfully completed it, he still has the benefit of there's no conviction, and deemed even without an adjudication of guilt under the court supervision statute. So if he really and truly wanted to appeal that $125 fine, he would have to ask for conditional discharge, which of course he'd still want the supervision. But if there were to be the more severe consequences of probation or a sentence or conviction, he would get to appeal at that point. So under that theory, if somebody is sentenced to supervision, successfully completes it, then that person can't appeal now, right? That's correct, under the language of the rule. Are there any cases that say that? There's no precedential case specifically discussing the language of this rule either way. It doesn't specifically say what the court meant by deciding to put the place under supervision and the conditions of supervision phrases first. But there's also no case that's saying this is for sure what it means, where the court explicitly looks at that rule and explicitly determines that issue. Thank you. Thank you, Your Honors. Addressing the point first about the appealability of this case, I think the clearest thing is that the state has no authority for the proposition that an order of supervision cannot be appealed, or the finding of guilt which underlies a disposition of supervision cannot be appealed. We certainly know that every reviewing court in this state has, without a second thought, considered supervision cases, that this court considers traffic cases and considers motions to suppress. This court has reached the sufficiency of the evidence in supervision cases. This court has found that a village doesn't have the authority to prosecute a traffic violation resulting in supervision, and they did so in a supervision case. That's clearly been the practice. What would happen here, we do know, is if a person is sentenced to prison, he or she can challenge the finding of guilt and the conditions of the sentence, the sentence and the conditions thereof. Sentence to probation, the same. Even if the person is just sentenced to a fine, the person would be able to come in here and argue to the court, as I have this morning, that the finding of guilt should not stand. The defendant would also be able to argue that there was a basic defect with the process by which he was found guilty. The state has carved up one exception to that general rule that an appellant can challenge. The finding of guilt and the sentence. They do so for a person who is placed on supervision, and they do so by looking at the rule. Admittedly, this rule is awkward. Even under the state's own reasoning, the rule is awkward because it refers to a person being able to appeal from the judgment and may seek review of the conditions of supervision. Strictly speaking, there is no judgment in a case involving supervision because the judgment is the finding of guilt and the sentence, and as the counsel pointed out, there is no sentence in a supervision case. There is a disposition. But if you read it in the disjunctive, you're placed on supervision or found guilty and sentenced to probation, conditional, disjunctive, periodic imprisonment. There's a lot of ors in the language of Rule 604 that the state is ignoring, and I'm sorry to interrupt you, Justice Schmidt, but to me it's not difficult to read the rule at all if you understand the meaning of or. Right, and clearly one of the ors is or the finding of guilt. I think if 604B had one more comma and one other phrase rather than the word both, there would be no issue whatsoever. Right. But even as it is, it does refer to a finding of guilt, appeal of the finding of guilt, and we do know that there is a finding of guilt in a case involving supervision, and that's our basic claim. Well, isn't this easier than that? I mean, it strikes me as the tempest. The judge fined this fellow $125, didn't he? Yes, he did. Bam, done, right? You win. If it had just been a fine and no supervision, the defendant could have appealed that. The fine was imposed as a condition of supervision, as I understand it. It was still a fine. It is still a fine and clearly would have been able to appeal that. Under Rule 604B, referring to supervision, even if this case had been a simple fine case, he should be able to challenge the finding of guilt. He should be able to challenge the fairness of the process by which he was placed on supervision. Or he can challenge the $125 fine, which is a condition of supervision in the rule, or the finding of guilt, or both. Here he didn't appeal both. He's just appealing the finding of guilt, and to me it's simple. We believe that it should be resolved that simply also. There is a right to appeal here. We believe it's just as simple in terms of what the conclusion should be by this court, and I'll return to that point just briefly. Before you do, is there anything in the record that tells us what happened, that he successfully completed? That's not a matter of recognition. There would be some irony there, would there not, if he did? If he completed the term of supervision, then he would be out from under that. The problem is that there are collateral consequences involved with supervision. Now, if he completed that, he can't come back in. The state suggests that if he had violated the terms of supervision, then he'd be able to appeal the finding of guilt. Obviously, by that time it's far too late. He can't, on a revocation appeal, challenge the underlying finding. We know that from probation cases, and a court's not going to allow that in a supervision case either. There are collateral consequences involved. When a person is placed on supervision, that supervision can preclude a subsequent grant of supervision in another case. It can be used to enhance one offense to another. It can be used in aggregation of a sentence that's imposed in a case. There are collateral consequences, and a defendant, even though sentenced to a more moderate disposition, that is supervision, should be able to challenge the finding of guilt and the fairness of the process. This order of supervision is only six months long, so he could file a timely notice of appeal, and we would have to rush to render our judgment on review before the six months had expired under the logical extension of the state's argument. I don't know how many cases we get out this door within six months of the order being imposed. A large part of that is the delay that we face in handling cases also. Let me switch gears with you real quickly before you go. If I'm the trial fact, and you get up and testify in front of me that, well, the reason I slammed on my brakes was because either a coyote or a deer ran in front of me, can I think, and not run in front of you? No, I think it would have to be credited, because there is not the difference between a small deer and a coyote in the rain. And I've seen both. I'm familiar with both, all too familiar with the deer and, for that matter, the coyote as well. In the rain, at some sort of speed where a certain amount of attention is going to be directed to the person who's tailgating you from behind, it is not improbable, it was not contradicted by anything that Carla had said, and it was specifically corroborated by what the passenger had said to the police officer, and that is that there was something in the road. I don't know that you can look at the defendant's testimony in isolation and just put it to one side, because if you put it to one side, what do you have? You have the officer's assumption on the basis of nothing that was said, nothing that he had personally observed. All you have is his assumption that this was a classic case of break-checking and there is not an iota of evidence for any source. You've got to use your life experiences. And nobody could mistake even a small deer. Any deer old enough to walk is going to be twice as tall as a coyote. No, what I find, the most unbelievable thing that I find in this case is the fact that somebody would deliberately slam on the brakes while riding around in his pickup truck with his new girlfriend, having the old girlfriend tailgating him, would deliberately brake in order to cause an accident just to wait for the police and the ambulance to show up. I realize that, I realize that, but this takes stupidity to an extreme. And we have to look at what is the supporting evidence, because we have clients, I have clients, and I know, I am all too familiar with the fact that they do stupid things and dastardly things. I'm all too familiar with that. But there is some evidence, other evidence, to support the proposition that they have done this strange thing. We have no such supporting evidence in this case. And that's why. Thank you, Your Honor. Thank you, Mr. Myers. We will be taking the matter under advisement. And for now, there will be a brief recess for a panel change. Court is now at recess.